UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

EASTFIELD ASSOCIATES, LLC,
    Plaintiff,

v.

CINEMARK USA, INC.,
    Defendant,

CIVIL ACTION NO.: _____

**COMPLAINT**
**(Jury Trial Demanded)**

1. Plaintiff Eastfield Associates, LLC ("Eastfield" or "Landlord"), states as follows for its Complaint against Defendants Cinemark USA, Inc. ("Cinemark").

## PARTIES

2. Eastfield is a Delaware limited liability company with a principal place of business located at 1655 Boston Road, Springfield, Massachusetts.

3. Cinemark is a Texas corporation with a principal place of business located at 3900 Dallas Parkway, Plano, Texas.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. The Court has personal jurisdiction over Cinemark because Cinemark transacts business in this Commonwealth.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims in this action occurred in this judicial district.

## FACTS
### The Lease and Assignments

7. On December 8, 1998, Eastfield Mall Associates, LP ("EMA") entered into a written lease agreement with National Amusements, Inc. ("National Amusements") ("Lease") for an approximately 75,000 square-foot premises ("Demised Premises") located at the Eastfield Mall in Springfield, Massachusetts.

8. The Lease was for the operation of movie theaters in the Eastfield Mall on the Demised Premises.

9. A true and accurate copy of the Lease is attached hereto as **Exhibit A**.

10. Article 28.01 of the Lease states that assignments of the Lease are permitted with "the prior written consent of Landlord."

11. EMA assigned its landlord rights and obligations under the Lease to Eastfield and, in turn, on or about January 14, 2010, Eastfield, National Amusements, and Rave Eastfield, LLC ("Rave") executed an Assignment and Assumption of Lease Agreement ("First Assignment").

12. A true and accurate copy of the First Assignment authorized by Eastfield is attached hereto as **Exhibit B**.

13. Article 2 of the First Assignment states, in pertinent part, that:

   (a) National Amusements assigns and transfers "all of its right, title and interest in, to and under the Lease, the Premises, and any improvements thereon," to Rave Eastfield;

      (b)     Rave Eastfield assumes "the performance of all of the terms, covenants, conditions and obligations of Tenant under the Lease"; and

      (c)     Rave Eastfield "agrees to well and truly perform all of the terms, covenants and conditions of the Lease . . . with the same force and effect as if [Rave Eastfield] had signed the Lease originally as the Tenant thereunder."

14.     On or about January 7, 2013, Eastfield, Rave Eastfield, and Cinemark executed a Consent and Assignment and Assumption of Lease Agreement ("Second Assignment").

15.     A true and accurate copy of the Second Assignment is attached hereto as **Exhibit C**.

16.     Article 2 of the Second Assignment states in pertinent part:

> <u>Assignee hereby assumes the performance of all of the terms, covenants, conditions and obligations of [Rave Eastfield] under the Lease</u> . . . and agrees to pay all such amounts as and when due thereunder, including the rents and other charges reserved by or provided for in the Lease, on the next payment date and thereafter until the expiration or earlier termination of the Lease, and agrees to well and truly perform all of the terms, covenants and conditions of the Lease arising from and after the Closing Date with the same force and effect <u>as if Assignee had signed the Lease originally as the Tenant thereunder</u>.

(emphasis added).

## Term of the Lease

17.     The duration of the Lease was twenty (20) years.

18.     The Lease provided the Tenant with the option to extend the Lease for six additional terms of five years ("Extension Terms").

19.     On or about November 20, 2018, Eastfield and Cinemark executed an amendment to the Lease ("Third Amendment").

20. A true and accurate copy of the Third Amendment is attached hereto as **Exhibit D**.

21. Article 1 of the Third Amendment states that the Lease Extension Terms are amended as follows:

> Extension Terms. Tenant currently has the option to extend the Lease term for six (6) additional terms of five (5) years each (each an Extension Term). Notwithstanding anything in Article 53 of the Lease to the contrary, the first of such six (6) options is hereby deleted and in lieu thereof, Tenant is hereby granted two (2) three (3) year options to extend the Lease term. Landlord and Tenant hereby agree that Tenant is deemed to have exercised the first of such three (3) year options thereby extending the Lease term to July 31, 2022.

(emphasis added).

22. Article 53.02 states that the term of the Lease "shall mean the term as extended by any applicable extension term."

### Non-Payment of Rent and Related Costs

23. Article 2 of the Third Amendment states as follows regarding rent:

> Rent. Notwithstanding anything in the Lease to the contrary, beginning August 1, 2019 and continuing for the remainder of the first three (3) year Extension Term (and any Extension Term thereafter), in lieu of Fixed Minimum Rent and/or Percentage Rent, Tenant shall pay an annual percentage rent equal to the greater of (i) fifteen percent (15%) of Tenant's Gross Sales attributable to such period, or (ii) $425,000 ("New Rent"). Since New Rent shall be a minimum of $425,000 annually, beginning August 1, 2019, Tenant shall pay to Landlord a fixed monthly amount of $35,416.67. Not later than forty-five (45) days following each Lease Year, Tenant shall provide Landlord with a report setting forth the amount of Gross Sales for the previous Lease Year (August 1-July 31), and if applicable, payment of any additional New Rent.

(emphasis added).

24. Cinemark did not pay monthly rent of $35,416.67, as set forth in the Third Amendment, from April to August 2020.

25. As of August 7, 2020, the total amount owed by Cinemark to Eastfield for monthly rent was $177,039.35.

26. Article 11 of the Lease states that Tenant shall pay, as Additional Rent, an amount equal to the Landlord's Common Area Operating Costs multiplied by the percentage of the Demised Premises with respect to the total rentable floor space at the Shopping Center.

27. Cinemark's monthly Common Area obligations, which it paid prior to April 2020, was $21,479.00.

28. Cinemark did not pay monthly Common Area charges from April to August 2020.

29. As of August 7, 2020, the total amount owed by Cinemark to Eastfield for Common Area charges was $101,476.

30. Article 23 of the Lease states that Tenant shall pay, as Additional Rent, an amount equal to Tenant's Percentage of the real estate taxes for such tax year.

31. On or about March 8, 2001, Eastfield and National Amusements executed the First Amendment to Lease ("First Amendment"), which modified Article 23 of the Lease: "Real Estate Taxes."

32. A true and accurate copy of the First Amendment is attached hereto as **Exhibit E**.

33. Article 2 of the First Amendment states that Tenant's Percentage, with respect to Real Estate Taxes, is a percentage representing the Demised Premises as a proportion of the total rentable floor space in the Shopping Center.

34. Cinemark's monthly Real Estate Tax obligations under the Lease, which it paid prior to April 2020, was $7,170.00.

35. Cinemark did not pay monthly Real Estate Tax payments from April to August 2020.

36. As of August 7, 2020, the total amount owed by Cinemark to Eastfield for Real Estate Taxes was $35,015.

37. Article 46(C) of the Lease states that Tenant must pay to Landlord a late charge "upon demand" of "$.05 for each $1.00 which remains so unpaid."

38. Cinemark did not pay late charges assessed by Eastfield on April 30, 2020; May 31, 2020; June 23, 2020; July 31, 2020; and August 7, 2020.

39. As of August 7, 2020, the total amount owed by Cinemark to Eastfield for late charges was $15,676.50.

40. Article 46(C) states that if Tenant's "failure to pay shall continue for more than thirty (30) days after such payment was first due, then . . . interest at the rate of two percent (2%) over the prime lending rate announced from time to time by Citibank, N.A. shall accrue from and after the date on which any such sum was first due and payable."

41. Cinemark did not pay interest, which was assessed by Eastfield on April 30, 2020; May 31, 2020; June 23, 2020; June 24, 2020; July 31, 2020; and August 7, 2020.

42. As of August 7, 2020, the total amount owed by Cinemark to Eastfield for interest was $1,208.65.

43. As of August 7, 2020, the total amount due and payable by Cinemark to Eastfield, including Rent, Common Area payments, Real Estate Taxes, Late Charges, and Interest was $330,415.50.

44. A true and accurate copy of the statement of accounts as of August 7, 2020, is attached hereto as **Exhibit F**.

45.     Eastfield retains the right to supplement this Complaint to add claims for past-due payments as same become due and payable during the pendency of this litigation.

## Utilities

46.     Article 31 of the Lease states that Tenant, at its own cost and expense, must arrange and pay for all of the utilities.

47.     At or about the time of Cinemark's Notice of Intent to Vacate, Cinemark shut off all utilities on the Demised Premises.

48.     Since the time of Cinemark's Notice of Intent to Vacate, Eastfield has been forced to pay utilities for the Demised Premises.

## Damage to Property

49.     Article 17 of the Lease states that the Tenant is obligated to "maintain the Demised Premises as a modern first-class movie theater" "in good order, condition and repair"; an obligation that extends to "electrical systems, fixtures and equipment," "irrespective of the ownership of any items of equipment."

50.     Article 17 of the Lease states that upon Tenant's refusal or failure to comply with Article 17, Tenant is required to pay, on demand, as Additional Rent, the reasonable costs of Landlord's undertaking of the obligations set forth therein, with interest thereon at the rate set forth in Paragraph C, Article 46.

51.     Article 37 of the Lease states that the Landlord may recover "the reasonable expenses of reletting, including altering and preparing the Demised Premises for new tenants, brokers' commissions, and all other reasonable expenses."

52.     Article 39 of the Lease states that Tenant must "peaceably surrender the Demised Premises in good order, condition and repair and in broom-clean condition," and that all

"alterations, additions, improvements and fixtures . . . shall remain on and be surrendered with the Demised Premises."

53. Article 39 of the Lease states that Tenant is required to give Landlord the option to purchase Tenant's theater property prior to Tenant's surrender of the Demised Premises at ninety percent (90%) of its fair market value.

54. Cinemark failed to give Eastfield an option to purchase its theater property as required by the Lease.

55. Prior to Cinemark's Notice of Intent to Vacate, Cinemark caused substantial damage to the Demised Premises, including but not limited to:

    (a) Tearing out and trashing custom movie screens that were fifty (50) feet wide and twenty-four (24) feet tall from sixteen (16) theaters;

    (b) Tearing out and trashing speakers throughout sixteen (16) movie theaters;

    (c) Removing and trashing projection and amplifying equipment in sixteen (16) movie theaters;

    (d) Removing and trashing or destroying seating in several theaters;

    (e) Tearing out and trashing all concession fixtures and equipment;

    (f) Tearing out and trashing fixtures in several bathrooms;

    (g) Ripping out lighting and other fixtures in the lobby and hallways; and

    (h) Cutting pipes, plumbing and electrical wires and leaving plumbing and electrical wires exposed;

### Advertising

56. Article 49 of the Lease states that Tenant is not permitted to use the Shopping Center's name "in any confusing, detrimental or misleading manner."

57. Cinemark has listed the Eastfield 16 theater as "permanently closed" on its website.

58. The Eastfield 16 page of Cinemark's website directs viewers to other nearby Cinemark locations.

59. By listing the Eastfield 16 theater as "permanently closed" and directing customers away from the Eastfield Shopping Center to other Cinemark locations, Cinemark has used and is using the Eastfield Shopping Center's name in a confusing, detrimental, and misleading manner.

### Attorneys' Fees and Costs

60. The Lease, Article 26, provides that, in the event of any litigation between the Landlord and Tenant, the non-prevailing party shall pay "any and all reasonable legal fees and any reasonable other costs and expenses incurred by the prevailing party in such litigation."

### Cinemark's "Notice to Vacate"

61. During Cinemark's period of nonpayment of rent, Eastfield management made multiple calls to Cinemark in an attempt to discuss the status of rent payment.

62. Cinemark did not respond to any such attempts by Eastfield to communicate.

63. On or about June 23, 2020 counsel for Eastfield sent a Notice of Default to Cinemark, notifying Cinemark that it had failed to pay rent as required by the terms of the Lease and that – as of that date – Cinemark owed Eastfield $259,295.77.

64. A true and accurate copy of Eastfield's Notice of Default is attached hereto as **Exhibit G**.

65. On or about June 26, 2020, Cinemark sent a Notice of Intent to Vacate to Eastfield.

66. A true and accurate copy of the Notice of Intent to Vacate is attached hereto as **Exhibit H**.

67. The Notice of Intent to Vacate stated that because of financial difficulties relating to the SARS-CoV2 coronavirus and associated COVID-19 disease, Cinemark would "be vacating the premises and returning possession of the premises to Landlord" and that Cinemark "hereby relinquishes its right to tenancy under the Lease and waives any term remaining on the Lease."

68. By letters dated August 10, 2020, Eastfield notified Cinemark of its liability arising out of its breach of the Lease.

69. Any and all conditions precedent to the filing of this action have been fulfilled, satisfied, waived or excused.

## Count I
## Account Stated

70. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

71. Pursuant to the Lease and the subsequent amendments thereto, Cinemark agreed to pay Eastfield the amounts stated therein for use of the Demised Premises as a modern first class movie theater.

72. A true and accurate statement of account totaling $330,415.50 for Lease of the Demised Premises from April 1, 2020 to August 7, 2020 is attached hereto as **Exhibit F.**

73. Cinemark, without justification, excuse or dispute of amounts due, has not paid Eastfield any part of this amount.

74. Cinemark is liable for its breach of the Lease and the amount due as set forth in the Statement of Account due.

## Count II
## Breach of Lease Contract – Action for Past Due Rent

75. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

76. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

77. Eastfield performed all of its obligations under the agreement.

78. Without legal justification or excuse, Cinemark materially breached the Lease by failing to pay monthly rent when due and payable.

79. As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

## Count III
## Breach of Lease Contract – Action for Past Due Common Area Payments

80. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

81. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

82. Eastfield performed all of its obligations under the agreement.

83. Without legal justification or excuse, Cinemark materially breached the Lease by failing to pay monthly common area payments when due and payable.

84. As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

## Count IV
### Breach of Lease Contract – Action for Past Due Real Estate Tax Payments

85. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

86. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

87. Eastfield performed all of its obligations under the agreement.

88. Without legal justification or excuse, Cinemark materially breached the Lease by failing to pay monthly Real Estate Tax payments when due and payable.

89. As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

## Count V
### Breach of Lease Contract – Action for Past Due Late Charges

90. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

91. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

92. Eastfield performed all of its obligations under the agreement.

93. Without legal justification or excuse, Cinemark materially breached the Lease by failing to pay late charges when due and payable.

94. As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

## Count VI
### Breach of Lease Contract – Action for Past Due Interest

95. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

96. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

97. Eastfield performed all of its obligations under the agreement.

98. Without legal justification or excuse, Cinemark materially breached the Lease by failing to pay interest when due and payable.

99. As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

## Count VII
## Breach of Lease – Utilities

100. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

101. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

102. Eastfield performed all of its obligations under the agreement.

103. Without legal justification or excuse, Cinemark materially breached the Lease by failing to pay for utilities at the Demised Premises.

104. As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

## Count VIII
## Breach of Lease Contract – Physical Damage to Demised Premises

105. Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

106. A valid and enforceable lease agreement exists between Eastfield and Cinemark.

107. Eastfield performed all of its obligations under the agreement.

108. Cinemark failed to give Eastfield an opportunity to purchase the property as required under Article 39 of the Lease.

109. Cinemark agreed in Article 37 of the Lease that it would be liable for the reasonable expenses incurred or paid by Eastfield in connection with reletting, including altering,

and preparing the Demised Premises for new tenants, brokers' commissions, and all other reasonable expenses.

110.    Without legal justification or excuse, Cinemark materially breached the Lease by failing to keep the Demised Premises in good order, condition, and repair and failing to otherwise fulfill its obligations as set forth in Article 17 of the Lease.

111.    As a direct and proximate result of Cinemark's breach of the Lease, Eastfield has suffered, is suffering, and will continue to suffer substantial damages.

### Count IX
### Declaratory Judgment – Amounts to Become Due and Payable

112.    Eastfield hereby reasserts and realleges the allegations set forth in the preceding paragraphs.

113.    Cinemark has continuing obligations arising out of the Lease, which include monthly payments, continue to the end of the Lease term.

114.    Eastfield is entitled to a declaration that Cinemark is obligated to perform under the Lease, which includes but is not limited to the monthly payments alleged herein that will become due and payable, continues to the end of the Lease term.

**WHEREFORE**, Eastfield asks the Court to enter Judgment in its favor and against Cinemark with respect to Eastfield's claims and award relief as follows:

a.  Money damages owed to Eastfield in the form of unpaid Past due rent;

b.  Money damages owed to Eastfield in the form of unpaid Common Area payments;

c.  Money damages owed to Eastfield in the form of unpaid Real Estate Tax payments;

d.  Money damages owed to Eastfield in the form of unpaid late charges;

e.  Money damages owed to Eastfield in the form of unpaid interest;

    f.   Money damages in the form of future monthly payments as same become due and payable to Eastfield;

    g.   Money damages arising out of Cinemark's failure to pay utilities at the Demised Premises;

    h.   Money damages arising from Cinemark causing physical damage to the Demised;

    i.   Attorneys' fees and costs pursuant to Article 26 of the Lease;

    j.   Pre-judgment and post-judgment interest; and

    k.   All other relief to which Eastfield may be entitled.

## JURY TRIAL

THE PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: August 20, 2020

                                                The Plaintiff,
EASTFIELD ASSOCIATES, LLC
By Its Attorneys:

*/s/ Jeffrey E. Poindexter*
Jeffrey E. Poindexter, BBO 631922
Christopher St. Martin, BBO 704816
Bulkley, Richardson and Gelinas, LLP
1500 Main Street – Suite 2700
P.O. Box 15507
Springfield, Massachusetts 01115-5507
Telephone: (413) 781-2820
Facsimile: (857) 800-8249
jpoindexter@bulkley.com
cstmartin@bulkley.com

3328225v1